UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:        DIANA ELIZABETH LEMUS,                    Case No. 14-31394-KRH
                                                        Chapter 13
              Debtor.

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss the Debtor's chapter 13 case, submitted by HSBC Bank, USA ("HSBC"). For the reasons set forth below, the Court finds that 11 U.S.C. § 1127(e) does not prevent the Debtor from filing a subsequent chapter 13 case after substantial consummation of the Debtor's prior chapter 11 plan (the "Chapter 11 Plan"). The Debtor experienced a substantial and unanticipated change in her financial condition and her chapter 13 bankruptcy case was filed in good faith. Therefore, the Court denies HSBC's Motion to Dismiss.

**Factual Background**

HSBC is a creditor of Diana Elizabeth Lemus (the "Debtor"). The claim held by HSB is evidenced by a promissory note (the "Note") dated October 15, 2001, in the original principal amount of $450,800.00. The Note is secured by a Deed of Trust on real and personal property held by the Debtor. On April 20, 2010 (the "Chapter 11 Petition Date"), the Debtor filed a Voluntary Petition under chapter 11 of the Bankruptcy Code[1] (the "Chapter 11 Bankruptcy Case"). As of the Chapter 11 Petition Date, the total amount of the arrearage due under the Note was $20,787.39. On September 23, 2010, the Court entered a consent order (the "Consent Order") in the Chapter 11 Bankruptcy Case modifying the terms of the automatic stay in order to permit and require the Debtor to resume making payments to HSBC on the Note. The terms of

---

[1] 11 U.S.C. §§ 1101–1174. All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

the Consent Order were subsequently incorporated into the Debtor's Chapter 11 Plan, which was confirmed and substantially consummated.[2] On August 30, 2013 a Final Decree was entered in the Debtor's Chapter 11 Bankruptcy Case. On October 7, 2013 the case was closed.

The Debtor defaulted under her Chapter 11 Plan by failing to make the required payments on the Note. HSBC eventually scheduled a foreclosure sale for the property secured by the Note. When HSBC sent Notice of Default to the Debtor on June 27, 2013, the total arrearage due under the Note had ballooned to $53,406.70.

The Debtor filed a Voluntary Petition under chapter 13 of the Bankruptcy Code[3] (the "Chapter 13 Bankruptcy Case") on March 18, 2014 (the "Chapter 13 Petition Date"), in order to stop the foreclosure. The outstanding balance of the Note including all accrued interest and expenses for which the Debtor remained indebted as of the Chapter 13 Petition Date was $308,071.72. On April 10, 2014, HSBC filed its Motion to Dismiss the Debtor's Chapter 13 Bankruptcy Case (the "Motion to Dismiss") contending that the Debtor's new Chapter 13 Bankruptcy Case was an impermissible attempt to modify the Plan that had been confirmed in the prior Chapter 11 Bankruptcy Case. The Court held a hearing (the "Hearing") on the Motion to Dismiss on June 25, 2014. At the conclusion of the Hearing, the Court ordered the parties to submit supplemental briefs addressing the issue whether 11 U.S.C. § 1127(e) authorized an individual debtor to modify a confirmed and substantially consummated chapter 11 plan. This

---

[2] Substantial Consummation is a defined term in chapter 11 of the Bankruptcy Code. It is defined as follows:

> (2) "substantial consummation" means— (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

[3] 11 U.S.C. §§ 1301–1330.

memorandum opinion sets forth the Court's findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure.[4]

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Analysis

HSBC contends in its Motion to Dismiss that the Debtor cannot modify her Chapter 11 Plan once it has been substantially consummated.[5] HSBC contends that the filing of the Debtor's subsequent Chapter 13 Bankruptcy Case is nothing more than an attempt to modify her prior confirmed Chapter 11 Plan. HSBC relies on section 1127(b) of the Bankruptcy Code, which provides that "[t]he proponent of a plan or the reorganized debtor may modify [a] plan at any time . . . before substantial consummation of such plan." 11 U.S.C § 1127(b). HSBC argues that a modification of a chapter 11 plan by filing a subsequent chapter 13 case is prohibited by § 1127(b) of the Bankruptcy Code unless a substantial and unanticipated change in financial condition has occurred.

---

[4] Rule 9014(c) of the Federal Rules of Bankruptcy Procedure makes Rule 7052 applicable to this contested matter. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052, 9014.

[5] Whether a chapter 11 plan has been substantially consummated is a question of fact to be determined by the bankruptcy court on a case-by-case basis. *In re United States Brass Corp.*, 255 BR 189 (Bankr. E.D. Tex. 2000). There is no dispute in this case that substantial consummation of the Debtor's Chapter 11 Plan has occurred.

HSBC is correct that modification of a chapter 11 plan following substantial consummation of the plan is generally prohibited by Bankruptcy Code § 1127(b). However, an exception exists in Bankruptcy Code § 1127(e) when the debtor is an individual. Congress added subsection (e) to § 1127 through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109–8, 119 Stat. 23 (2005). That subsection reads as follows:

> (e) If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to—
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time period for such payments; or
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

11 U.S.C. 1127(e).

There is a relatively small amount of case law interpreting § 1127(e) of the Bankruptcy Code. Additionally, the legislative history pertaining to § 1127(e) is sparse. The few courts that have considered the amendment have looked to Bankruptcy Code §§ 1229(a) and 1329(a) for guidance. These sections are substantially analogous to § 1127(e). In fact, "[s]ection 1127(e) was added to the Bankruptcy Code in 2005 for the purpose of making the provisions for postconfirmation of chapter 11 plans when the debtor is an individual similar (but not identical) to the provisions for postconfirmation modifications of chapter 12 or chapter 13 plans." 7 *Collier on Bankruptcy* ¶ 1127.04 (16th ed. 2014) (internal footnote omitted).

The United States Court of Appeals for the Fourth Circuit has held that *res judicata*[6] bars the modification of a confirmed chapter 13 plan unless the debtor has experienced a substantial and unanticipated post-confirmation change in financial condition. *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143 (4th Cir. 2007). HSBC primarily relies on this case and the case of *In re Mercer*, Case No. 09-04088-8-ATS, 2013 WL 6507585 (Bankr. E.D.N.C. Dec. 12, 2013) to advance its argument. Both of these decisions are distinguishable from the case at bar.

In *Murphy*, the Fourth Circuit considered whether a Chapter 13 Trustee could modify the plans in two separate unrelated chapter 13 cases in order to increase the dividend paid to unsecured creditors. Discussing the modification standard in the Fourth Circuit, the court held that "the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition." *Murphy*, 474 F.3d at 150. This initial inquiry is necessary to determine if *res judicata* prevents modification of the plan. "If the change in the debtor's financial condition was either insubstantial or anticipated, or both, the doctrine of *res judicata* will prevent the modification of the confirmed plan." *Id.*

In *Mercer,* an unsecured creditor sought to modify the debtor's confirmed chapter 11 plan pursuant to § 1127(e). The United States Bankruptcy Court for the Eastern District of North Carolina, relying on the Fourth Circuit's analysis in *Murphy*, found that the unsecured creditor could not modify the debtor's plan post-confirmation. *Mercer*, 2013 WL 6507585 at *4–5. Reciting the post-confirmation modification standard in chapter 13 cases, the court in *Mercer* stated "[t]he right of the trustee or the holder of an unsecured claim should be limited to situations in which there has been an unanticipated substantial change in the debtor's income or

---

[6] *Res Judicata*, which is also known as claim preclusion, is the legal principle under which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.*, 440 U.S. 147, 153 (1979).

5

expenses that was not anticipated at the time of the confirmation hearing." *Id.* at *4 (quoting 8 *Collier on Bankruptcy* ¶ 1329.03 (16th ed. 2013)).

HSBC's contention is that under *Mercer* and *Murphy* the Debtor cannot use Bankruptcy Code § 1127(e) to modify her confirmed Chapter 11 Plan by filing a subsequent chapter 13 case absent a substantial and unanticipated change in circumstances. What has occurred here, however, is not a modification of the Debtor's confirmed Chapter 11 Plan in the context of the prior Chapter 11 Bankruptcy Case, but rather a subsequent filing of an entirely new bankruptcy case. Further financial reorganization in a subsequent bankruptcy case does not constitute a plan modification in the prior case. New parties, new debt, new assets, and new circumstances may be present in this subsequent case that were entirely absent in the first. A new order for relief has been issued. Section 1129(a)(11) of the Bankruptcy Code contemplates the possibility that an unlikely need for further reorganization or liquidation could possibly arise. The *res judicata* standard that was applicable to a plan modification initiated by the Chapter 13 Trustee in *Murphy* is not applicable here. This is simply a new case. Nothing in the Bankruptcy Code prohibits a debtor from having successive chapter 11 and chapter 13 cases. The case law does require, however, that the subsequent chapter 13 case be filed by the debtor in good faith.

The United States Bankruptcy Court for the Southern District of Texas considered whether the Bankruptcy Code would permit a debtor to file a new chapter 13 case before the debtor had received a discharge in a prior chapter 11 case.[7] *In re McMahan*, 481 B.R. 901

---

[7] An individual debtor in chapter 11 generally does not receive a discharge until all plan payments are completed, unless one of the exceptions contained in the subsection are satisfied. 11 U.S.C. § 1141(d)(5) ("(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan— . . . (5) In a case in which the debtor is an individual— (A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan."). Congress added subsection (d) to § 1141 in 2005 through the BAPCPA amendments.

(Bankr. S.D. Tex. 2012). In *McMahan*, the debtor filed a chapter 13 plan following his confirmed chapter 11 plan with the primary purpose being to change the payment schedule that the debtor had negotiated with his bank in the chapter 11 case. *Id.* at 904. In analyzing whether the Bankruptcy Code permitted this subsequent filing, the court stated that "inherent in *any* bankruptcy case is a fundamental prerequisite: a debtor must file his petition in good faith." *Id.* at 915 (citing *Elmwood Dev. Co. v. Gen. Elec. Pension Trust (In re Elmwood)*, 964 F.2d 508, 510 (5th Cir. 1992)). The purpose of this requirement is twofold, first to protect the rights of creditors and second to maintain the integrity of the bankruptcy system. *Id.* The court went on to find that the good faith requirement is applicable to a chapter 13 case filed while the debtor is still involved in an active chapter 11 case. *Id.*

The appropriate issue for the Court to address in the case at bar is whether the Debtor has filed her subsequent Chapter 13 Bankruptcy Case in good faith. This Court has previously addressed the issue of good faith, applying a totality of the circumstances approach to its consideration of the confirmation requirements for a chapter 13 plan.[8] *In re Chaney*, 362 B.R. 690 (Bankr. E.D. Va. 2007). The Court noted that the Fourth Circuit Court of Appeals has instructed that:

> While no precise definition can be sculpted to fit the term "good faith" for every Chapter 13 case, we think the generally accepted definition of "good faith" as used in Chapter 11 of the old Bankruptcy Act, 11 U.S.C. § 766(4) (1976) (repealed), provides the general parameters: "A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan."

*Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982) (quoting 9 *Collier on Bankruptcy* ¶ 9.20 at 319 (14th ed. 1978)). The Court must examine and determine in this context whether the

---

[8] Bankruptcy Code § 1325(a)(3) requires that the chapter 13 plan be proposed in good faith.

Debtor's new Chapter 13 Bankruptcy Case violates the spirit of the Bankruptcy Code, is a ploy to frustrate creditors, or is a "sincere effort on the part of the debtor to advance the goals and purposes of chapter 13." *Chaney*, 362 B.R. at 694. The court may consider in this context whether the debtor has experienced a substantial change in his or her financial affairs. *Id.* There is no precise, enumerated test the Court must employ for determining whether the Debtor has engaged in good faith. In fact, "courts may consider any factors that evidence 'intent to abuse the judicial process' or factors that show 'a petition was filed to delay or frustrate legitimate efforts of a secured creditor to enforce his rights.'" *McMahan*, 481 B.R. at 915 (quoting *MacElvain v. I.R.S.*, 180 B.R. 670, 673 (M.D. Ala. 1995)).

Here, the Court finds that the Debtor is making a good faith effort to repay creditors and has not filed this subsequent Chapter 13 Bankruptcy Case with the intent to delay or frustrate the efforts of secured creditors to enforce their rights. The facts in this case are distinguishable from those in *McMahan*, where the court found the debtor was not proceeding in good faith. In *McMahan*, the debtor filed the subsequent chapter 13 case with essentially the sole purpose of frustrating the efforts of a creditor pursuing foreclosure. *See id.* at 920–21. That is not the Debtor's purpose for filing her chapter 13 in this case.

The evidence before the Court in this case comes from the testimony of the Debtor at the Hearing, as well as from documents filed with the Court. The first factor that supports a finding that the Debtor is proceeding in good faith is that she has, in fact, experienced a substantial and unanticipated change in her financial condition. While debtors generally experience a negative change in their financial condition prior to modifying their existing plan or filing a new plan, the Debtor in this case has experienced a positive change in her financial condition. The Debtor's monthly income has increased from the time she filed her Chapter 11 Bankruptcy Case. The

8

Debtor testified that this increase in her income resulted from her ability to lease the majority of the space available in her commercial real estate and from her ability to realize increased commissions from the distribution of Herbalife nutritional products. In contrast, the debtor in *McMahan* had not experienced any substantial and unanticipated change in his financial condition. *See id.* at 919 ("[T]his Court concludes that there are no unforeseen changed circumstances."). As the *McMahan* court advised, "unanticipated changed circumstances *could* justify a Chapter 24 petition"[9] and "a second petition would not necessarily contradict the original proceedings because a legitimately varied and previously unknown factual scenario might require a different plan to accomplish the goal of bankruptcy." *Id.* (quoting *In re Elmwood*, 964 F.2d at 511–12) (internal quotation marks omitted). As a result of the Debtor's change in financial circumstances in the case at bar, the Debtor is now capable of paying her secured, priority, and unsecured creditors in her proposed Chapter 13 Plan, something she was incapable of doing in her Chapter 11 Bankruptcy Case. The Debtor's changed circumstances and efforts to repay creditors support a finding that the Debtor is proceeding in good faith.

In addition to payment of the Note held by HSBC, the Debtor's Second Amended Chapter 13 Plan provides for the payment of numerous secured debts including debts owed to the City of Richmond for delinquent rental property taxes. The Second Amended Chapter 13 Plan provides for the payment of tax claims filed by the Internal Revenue Service. It also provides for payment of a portion of the Debtor's unsecured debt such as that owing for unpaid utility bills. The Debtor's Second Amended Plan proposes to pay a total of $419,825.00 to creditors over sixty months. The Court is persuaded by the evidence that the Debtor is not proceeding with the intent to either frustrate the legitimate efforts of secured creditors or to impinge upon the goals

---

[9] A "Chapter 24 petition," in bankruptcy parlance, is a chapter 11 case followed by a chapter 13 case.

and purposes of chapter 13.  Rather, the Debtor's proposed plan is indicia of the Debtor filing her Chapter 13 Bankruptcy Case in good faith.

The Court holds that Bankruptcy Code § 1127 does not prevent the Debtor from filing a subsequent chapter 13 case after substantial consummation of her Chapter 11 Plan.  The Court finds that the Debtor has experienced a substantial and unanticipated change in her financial condition and that she is proceeding in her Chapter 13 Bankruptcy Case with a good faith effort to repay her creditors.  Thus, HSBC's Motion to Dismiss will be denied.

A separate order shall issue.

ENTERED: Sep 17 2014

                                            /s/ Kevin R. Huennekens
                                  UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: Sep 17 2014